Houston, J.
Plaintiff Alvin Slotnick (Slotnick) brings this action against defendants Dymon, Inc. (Dymon) and State Chemical Manufacturing Company (State Chemical) to recover damages resulting from a fire at his apartment complex. Slotnick alleges that an insecticide manufactured by Dymon ignited, causing a fire that destroyed two buildings of his apartment com *155 plex. The defendants now move to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6) on the ground that the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. §136 et seq., preempts Slotnick’s claims. For the reasons stated below, the defendants’ motion to dismiss is allowed in part and denied in part.
BACKGROUND
The complaint sets forth the following facts.
Dymon manufactures, and State Chemical distributes, an insecticide bearing the brand name, “Dead End.” Slotnick owns an apartment complex in Peabody. Responding to a tenant’s request, one of Slotnick’s maintenance employees sprayed Dead End insecticide inside an apartment located within Slotnick’s apartment complex. Although Slotnick’s maintenance employee obeyed the instructions on the insecticide’s container, the Dead End insecticide ignited, causing a fire that resulted in extensive damage to Slotnick’s apartment complex.
DISCUSSION
The complaint contains eight counts; the defendants claim that FIFRA preempts counts one through, and including, six. The preemption doctrine is derived from Article VI of the United States Constitution, which provides that the Constitution and Laws of the United States “shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const. Art. VI, cl. 2. Because the general police powers have been historically committed to the states’ jurisdiction, Congress must demonstrate clearly its intent to supersede state law for its legislation to have preemptive effect. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).
FIFRA is a' comprehensive regulatory statute governing, among other things, the purchasing and labeling of pesticides, insecticides, and rodenticides. See Wisconsin Public Intervenor v. Mortier, 111 S.Ct. 2476, 2479-81 (1991) (discussing FIFRA’s purpose and history). The Environmental Protection Agency (EPA) has regulated pesticide, insecticide, and rodenticide labeling extensively. See 40 C.F.R. §156.10 (1993) (pesticide labeling regulations); Davidson v. Velsicol Chemical, 834 P.2d 931, 935 (Nev. 1992).
FIFRA contains an express preemption provision. Section 136v, entitled “Authority of States,” provides in pertinent part:
(a) A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchap-ter.
(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
7 U.S.C. §136V.
This court’s review is limited to determining whether Slotnick’s claims fall within the ambit of claims that §136v expressly preempts. Cipollone v. Liggett Group, Inc., 112 S.Ct. 2608, 2618 (1992) (express preemption provision implies that matters beyond the scope of such provision are not preempted).
The defendants claim that §136v(b) preempts all of Slotnick’s claims because each claim is based on a state law that imposes labeling requirements “in addition to or different from” FIFRA’s labeling requirements.[3] Counts one and two allege that the defendants committed negligence by failing to warn consumers adequately of Dead End’s flammability. FIFRA manifestly preempts Slotnick’s claims based on the defendants’ alleged failure to warn because liability under such a theory is predicated on an inadequacy in the product’s warning label and would inevitably impose labeling requirements “in addition to or different from” those required by FIFRA.[4] King v. E.I. DuPont de Nemours and Co., 996 F.2d 1346, 1350-51 (1st Cir. 1993), cert. dismissed, 126 L.Ed.2d 440 (1993) (FIFRA preempted state common law tort claims based on failure to warn); Papas v. Upjohn Co., 985 F.2d 516, 517-18 (11th Cir. 1993), cert. den., 114 S.Ct. 300 (1993) (FIFRA preempted plaintiffs negligence claim to the extent plaintiff challenged the adequacy of a warning label); Davidson v. Velsicol, supra, 834 P.2d at 936 (FIFRA preempts the field with respect to labeling).
Although FIFRA preempts counts one and two to the extent they allege liability based on the inadequacy of Dead End’s warning label, these counts also allege that Dymon committed negligence by designing and manufacturing, and State Chemical by selling, an unreasonably dangerous product. Thus, counts one and two in combination allege that the defendants are liable under both negligent failure to warn and negligent design theories. There is a distinction, though not always a clear one, between a claim based on a defective label and one based on a defective product.[5] Although FIFRA preempts state law tort claims based on negligent failure to warn, it does not preempt negligence claims to the extent that such claims pertain to manufacturing, design, or testing. Worm v. American Cyanamid Co., 5 F.3d 744, 747 (4th Cir. 1993).
Since Slotnick alleges that Dymon manufactured, and State Chemical distributed, a product that was negligently formulated, designed, and tested, he has stated a viable cause of action. The defendants’ motion to dismiss must be denied, therefore, with respect to counts one and two. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979) (complaint should not be dismissed if it could support relief under any theory of law).
*156 Counts three and four allege that Dymon and State Chemical breached their express and implied warranties by manufacturing and selling respectively a product that is both unfit for its intended use and not merchantable. The defendants argue that liability under express and implied warranties is necessarily contingent upon proof that Dead End’s warning label was inadequate. Since Slotnick must impugn the sufficiency of Dead End’s label to recover under a warranty theory, according to the defendants, FIFRA preempts counts three and four. This court disagrees.
In support of their argument, the defendants rely upon Worm v. American Cyanamid Co., supra, and Papas v. Upjohn Co., supra, in which the courts held that FIFRA preempted plaintiffs’ breach of warranty claims. In both cases, however, the courts noted that the plaintiffs’ claims challenged the adequacy of labels approved by the EPA pursuant to FIFRA. Worm v. American Cyanamid Co., supra, 5 F.3d at 749; Papas v. Upjohn Co., supra, 985 F.2d at 520.
As this court indicated previously, Slotnick does not challenge exclusively the adequacy of Dead End’s label. The complaint also alleges that Dymon manufactured, designed, and tested Dead End negligently. Under Massachusetts law, every seller warrants implicitly that their products are “fit for the ordinary purposes for which such goods are used.” G.L.c. 106, §3-314(2)(c). The critical inquiry involved in determining whether a seller breached the implied warranty of merchantability is whether the product was defective and unreasonably dangerous. Colter v. Barber-Greene Co., 403 Mass. 50, 61-62 (1988). Since the complaint alleges that Dead End was defective and unreasonably dangerous on account of Dymon’s improvident design and testing, the defendants can be liable for breaching their implied warranties without any showing that Dead End’s label was inadequate or inaccurate. Counts three and four, therefore, state viable causes of action, and the defendants’ motion to dismiss with regard to these counts must be denied.
Count five alleges that Dymon violated G.L.c. 231, §85J by making fraudulent misrepresentations to the EPA regarding Dead End’s inflammability. Applying the United States Supreme Court’s preemption analysis in Cipollone, FIFRA does not preempt claims based on a state law duty to provide an administrative agency with accurate product information. Cipollone v. Liggett Group, Inc., supra, 112 S.Ct. at 2623. However, G.L.c. 231, §85J creates no such duty. It merely creates a cause of action in favor of a purchaser of personal property against the seller of such property. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 708 (1990). Since G.L.c. 231, §85J creates no duty to make accurate disclosures to an administrative agency and Dymon and Slotnick did not have a purchaser-seller relationship, the defendants’ motion to dismiss must be allowed with respect to count five. Kourouvacilis v. General Motors Corp., supra.
Count six alleges that State Chemical violated G.L.c. 231, §85J by misrepresenting to Slotnick that Dead End “had been properly registered by the EPA, based on accurate product data, and/or that [Dead End’s] warnings adequately warned of [its] flammability.” The defendants claim that FIFRA preempts count six. This court agrees.
Unlike his negligence and breach of warranty claims, Slotnick’s misrepresentation claim against State Chemical in count six necessarily requires him to prove that the EPA-approved label on Dead End was inadequate or inaccurate. FIFRA, consequently, preempts count six. Cipollone v. Liggett Group, Inc., supra, 112 S.Ct. at 2623; Papas v. Upjohn Co., supra, 985 F. 2d at 519 (“it is for the EPA Administrator, not a jury, to determine whether labeling and packaging information is incomplete or inaccurate”). The defendant’s motion to dismiss with respect to count six must be allowed.
Counts seven and eight allege that the defendants violated G.L.c. 93A, §9. Arguing that these counts are derivative, the defendants move to dismiss them on the grounds that FIFRA preempts counts one through, and including, six. As noted, this court allows the defendants’ motion to dismiss exclusively with respect to counts five and six. To the extent that counts seven and eight derive from counts one through four, they are viable.
ORDER
For the foregoing reasons, it is ORDERED that the defendant’s motion to dismiss be ALLOWED with respect to counts five and six and DENIED with respect to counts one, two, three, four, seven, and eight.

 The United States Supreme Court has interpreted the term “requirement" in an express preemption provision to encompass both statutory and common law duties. Cipollone v. Liggett Group Inc., supra, 112 S.Ct. at 2620, (plurality option) (Justices Scalia and Thomas dissented, however, they agreed with the Court’s construction of the term “requirement”). Slotnick does not contend that §136v(b) preempts only positive enactments.

 Slotnick’s counsel conceded at a hearing on this motion that FIFRA preempts common law tort claims based on failure to warn adequately.

 The former is predicated on a duty to make products safe by warning consumers of products’ inherent dangers while the latter is predicated on a duty to make products safe by eliminating avoidable dangers. Uloth v. City Tank Corp., 376 Mass. 874, 879-80 (1978).